**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**FAITH J. LAROCQUE,**

                           **Plaintiff,**

    **vs.**                                       **8:13-CV-547
                                                     (MAD/CFH)**

**CAROLYN W. COLVIN,**

                           **Defendant.**

---

**APPEARANCES:**                              **OF COUNSEL:**

**LAW OFFICES OF DAVID**           **DAVID C. BURAN, ESQ.**
**C. BURAN P.C.**
78 Severance Green Suite 106
Colchester, Vermont 05446
Attorney for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **PETER W. JEWETT, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff commenced this action on May 10, 2013, pursuant to 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB"). *See* Dkt. No. 1.

On May 10, 2010, Plaintiff filed an application for DIB, alleging a disability onset date of August 2, 2008. *See* Dkt. No. 6, Administrative Transcript ("T.") at 125.[1] This application was

---

[1] Plaintiff's initial application alleges an onset date of January 1, 2009. T. at 125. However, at her hearing before the ALJ, Plaintiff clarified that the actual alleged onset date is August 2, 2008. *Id.* at 33.

denied on July 23, 2010. T. at 75-78. Plaintiff then requested a hearing and appeared with her counsel before Administrative Law Judge ("ALJ") Mary Sparks on July 18, 2011. *Id.* at 27. On September 20, 2011, ALJ Sparks issued a decision denying Plaintiff's application. *See id.* at 12-21. Plaintiff subsequently requested review by the Appeals Council and was denied such review on March 7, 2013, making the ALJ's decision the final decision of the Commissioner. *See id.* at 1-4.

Presently before the Court are the parties' cross motions for judgment on the pleadings. *See* Dkt. Nos. 19, 20.

## II. BACKGROUND

Plaintiff was born on May 27, 1981, and was 30 years old at the time of the hearing. T. at 31-32. Before August 2, 2008, and until October 2008, Plaintiff reported work as a day care provider for her cousin's children. *Id.* at 33. Plaintiff testified that she "lasted one month[,]" but had to "quit because it got too overwhelming for [her], and she could not handle it anymore." *Id.* Plaintiff further testified that she has not worked since then. *Id.*

The record evidence in this case is undisputed, and the Court adopts the parties' factual recitations regarding the relevant factual background. Dkt. No. 20 at 3 ("The Commissioner incorporates the statement of facts set forth in Plaintiff's Brief (Pl. Br.) 1-6, as well as the statement facts contained in the ALJ's decision. Tr. 12-21").

## III. DISCUSSION

**A.    Legal Standards**

*1. Five-step analysis*

For purposes of SSI and DIB, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(c)(3)(A). There is a five-step analysis for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citations omitted). The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *Id.*

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Record to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 2, 2008. T. at 14. At step two, the ALJ concluded that Plaintiff had the following severe impairments: panic disorder with agoraphobia, depression, and asthma. *Id.* At the third step of the analysis, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix. *Id.* at 15. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. *Id.* at 17. Additionally, the ALJ found that Plaintiff

> is limited to low stress work, which is defined as occupations having no decision-making responsibilities and requiring no changes in her work settings; occupations requiring no interaction with the public or co-workers; and she must avoid moderate exposure to extreme cold or respiratory irritants such as fumes, odors, gases, or poorly ventilated areas.

*Id.* At step four, the ALJ found that Plaintiff has been unable to perform any past relevant work. *Id.* at 20. At the fifth and final step of the analysis, the ALJ solicited the testimony of a vocational expert. *Id.* at 20-21. The vocational expert testified that a hypothetical individual of Plaintiff's age, with her education, past relevant work experience, and RFC (as described above), could perform the representative occupations of housekeeper, hand packager, and electrical assembler. *Id.* at 20. Respectively, these occupations are classified by the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") as: (1) job number 323.687-014, with 865,960 jobs existing nationally, (2) job number 920.587-018, with 676,870 jobs existing nationally, and (3) job number 728.687-010, with 180,440 jobs existing nationally. *Id.* at 20-21. The ALJ relied on this testimony to determine that Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 21.

**C.     Analysis**

### *1. Medical source statement of Dr. Frank*

Upon judicial review of a denial, a district court may remand a case to the Commissioner to consider additional evidence that was not included as part of the original administrative proceedings. *See* 42 U.S.C. § 405(g) (sentence six) ("The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ."). This type of remand, commonly referred to as a "sentence six remand," is only appropriate if a plaintiff can show that the evidence is (1) new and not cumulative of what is already in the record; (2) material in that it is relevant to the claimant's condition during the time period for which benefits were denied and there is a reasonable possibility that the new evidence would have influenced the Commissioner

5

to decide the disability determination differently; and (3) good cause has been shown for failing to present the evidence earlier. *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991); *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).

Plaintiff argues that the "Appeals Council should have considered the medical source statement of Psychiatrist Joshua Frank." Dkt. No. 19 at 8. In support of her position, Plaintiff stated that "it can be fairly inferred that Dr. Frank's opinions [were] necessarily based . . . on events which occurred/circumstances that existed prior to his first session with plaintiff - *prior to the ALJ's decision*." *Id.* at 9 (emphasis in original). However, Plaintiff failed to include this medical evidence for the Court's review along with her motion for judgment on the pleadings.

In response, Defendant alleges that "Plaintiff has submitted no evidence that the substance of Dr. Frank's opinion related to the relevant time period. . . . Nor has she presented any evidence that Dr. Frank was opining about her functioning prior to September 2011." Dkt. No. 20 at 7. Defendant also alleges that "Plaintiff has presented no evidence of a treating relationship during the relevant period" because Plaintiff's statements within her brief contradict the existence of a treating relationship prior to the ALJ's decision, and Plaintiff does not include the "nature of her treatment relationship with Dr. Frank, or the frequency of their treating relationship." *Id.* at 6.

The Court finds that Plaintiff has failed to support her position in regard to Dr. Frank's medical source statement, because Plaintiff has not included the alleged new and material evidence along with her motion for judgment on the pleadings. However, even if Plaintiff's statements regarding the new evidence are accepted as true, they would not require that the Court remand this case for further consideration of new evidence. "[P]ost-hearing evidence must be new and material, and must relate to the period on or before the date of the ALJ's decision." *Lasher v. Comm'r of Soc. Sec*, No. 1:11-cv-0777, 2012 WL 4511284, *4 (N.D.N.Y. Oct. 1, 2012).

Plaintiff did not allege that she had a treating relationship with Dr. Frank before the ALJ's decision, and without this new evidence, the Court cannot determine whether it is relevant to Plaintiff's condition during the time period relevant to the ALJ's decision. Although Plaintiff urges the Court to infer that Dr. Frank's opinion was based on "events which occurred/circumstances that existed prior to his first session with plaintiff[,]" her statements provide no basis to reach this conclusion. Dkt. No. 19 at 9. While Plaintiff's statements to Dr. Frank may well be based on events prior to their first session, Plaintiff has provided no basis for the Court to come to such a conclusion. *Paquette v. Colvin*, No. 7:12-cv-1470, 2014 WL 636343, *9 (N.D.N.Y. Feb. 18, 2014) (remanding based on new evidence where a treating relationship existed between the plaintiff and the physician before the ALJ's decision, and the physician submitted a "dramatically different" medical source statement after the ALJ's decision). Accordingly, the Court holds that Dr. Frank's medical source statement does not constitute new and material evidence that requires remand.

### *2. The ALJ's RFC determination is supported by substantial evidence*

Next, Plaintiff argues that the ALJ did not rely on substantial evidence when she determined Plaintiff's RFC. *See* Dkt. No. 19 at 9. However, she exclusively references her own testimony in support of this position. Therefore, the Court will conduct examinations of both the RFC determination and the ALJ's credibility determination regarding Plaintiff's testimony.

The ALJ determined that Plaintiff should have a job with "no decision-making responsibility and requiring no changes in her work setting; occupations requiring no interaction with the public or co-workers; and she must avoid moderate exposure to extreme cold or respiratory irritants such as fumes, odors, gases, or poorly ventilated areas." T. at 17.

The medical evidence record ("MER") in this case includes Plaintiff's progress notes and office treatment records from Tower Health Center (*id.* at 197-207, 238-44), social assessments and a psychiatric evaluation from the Cerebral Palsy Association (*id.* at 208-11, 214-16, 245-48), psychiatric summaries and treatment records from Community Health Center and the North Country (*id.* at 217, 353-65), treatment records from Alice Hyde Medical Center (*id.* at 316-52), a psychiatric review technique and Mental RFC assessment completed by A. Herrick, M.D. (*id.* at 218-37), and Dr. King's medical source statement (*id.* at 374-82). The Court finds that the MER is consistent with the ALJ's RFC determination.

Plaintiff briefly argues that Dr. King's medical source statement should have been disregarded by the ALJ, because it reflects only Dr. King's animosity towards Plaintiff's attorney. Dkt. No. 19 at 9. However, Defendant correctly contends that "[t]here is simply no evidence that Dr. King was biased against Plaintiff, or that he would punish his own patient for her dealings with her counsel . . . ." *Id.* at 10. After reviewing Dr. King's records, the Court finds that there is no evidence, beyond Plaintiff's own allegations, that Dr. King's medical source statement was not based on his treatment record with Plaintiff. Further, as discussed below, it is evident that, although the ALJ gave great weight to Dr. King's opinion, the RFC determination included limitations that were not present in Dr. King's medical source statement, but were consistent with other evidence in the record.

The evidence demonstrates that although the ALJ did not specifically reference all relevant evidence, her RFC determination is supported by substantial evidence. *Cichoki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision'") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). Dr. Herrick's

8

mental RFC assessment found "no marked limitations[,]" and that Plaintiff "is capable of adequately understanding and remembering; attending, concentrating, and persisting to do work like functions." T. at 234-36. Further, Dr. Herrick found moderate difficulties in maintaining social functioning, maintaining concentration, persistence, or pace, and found moderate restrictions in Plaintiff's activities of daily living. *Id.* at 228. These findings are consistent with those noted by the ALJ, when she determined that "plaintiff suffered from moderate symptoms" based on Dr. King's April 6, 2010 psychiatric evaluation. *Id.* at 214-16. The record shows that not only did the ALJ not "improperly mischaracterize[] evidence and ignore[] other evidence[,]" (Dkt. No. 10 at 10) but that she included non-exertional limitations that fully account for the medical evidence of record. She did this by taking into account Plaintiff's testimony "that she suffers from anxiety and panic attacks when in public" in the RFC determination, by limiting Plaintiff to "occupations requiring no interaction with the public or co-workers." T. at 17. Therefore, even if the Court agreed with Plaintiff that reliance on Dr. King's medical statement was legal error, any resulting error was harmless, because the ALJ included non-exertional limitations that take into account the whole record.

Additionally, while Plaintiff argues that the ALJ did not take into account Plaintiff's educational accommodations, the ALJ's decision shows that she considered Plaintiff's modified educational setting. As Defendant correctly contends, "a review of the decision reveals that the ALJ . . . noted, for example, that Plaintiff testified that she experienced significant anxiety and depression, that she experienced anxiety attacks, . . . and that she obtained her college degree only with the help of instructors who were aware of her situations and made accommodations." Dkt. No. 20 at 8 (citing T. at 18, 166-70, 172). Specifically, the ALJ referenced Plaintiff's testimony that "her instructors were aware of her situation and made accommodations." T. at 18. However,

the ALJ continued, stating that "[a]lthough the claimant stated that her instructors were aware of her limitations, she was nevertheless required to attend classes and interact with both instructors and classmates." *Id.* at 19. After reviewing the ALJ's decision and the rest of the record, the Court finds that the ALJ did not ignore any evidence when she made her RFC determination.

Based on the foregoing, the Court finds that the ALJ's RFC determination was supported by substantial evidence.

### *3. The ALJ made a proper credibility determination*

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. . . . The ALJ must consider "[s]tatements [the claimant] or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] makes to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings."

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including the following: (1) daily

10

activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether the plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. July 2, 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891, *10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

11

> [i]t is not sufficient for the adjudicator to make a single, conclusory
> statement that "the individual's allegations have been considered" or
> that "the allegations are (or are not) credible." It is also not enough
> for the adjudicator simply to recite the factors that are described in
> the regulations for evaluating symptoms. The determination or
> decision must contain specific reasons for the finding on credibility,
> supported by the evidence in the case record, and must be
> sufficiently specific to make clear to the individual and to any
> subsequent reviewers the weight the adjudicator gave to the
> individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

Plaintiff alleges that the ALJ failed to explain her credibility determination. Dkt. No. 19 at 13. However, other than chronicling the testimony that she alleges the ALJ ignored, Plaintiff makes no arguments regarding the ALJ's claimed error.

In response, Defendant claims that "there was little support for Plaintiff's [testimony] in the record." Dkt. No. 20 at 8. Defendant references the ALJ's decision, that "Plaintiff was necessarily required to attend class, and interact with professors and student[,]" and therefore "this level of activity is inconsistent with Plaintiff's claims." *Id.* at 8. Further, Defendant notes the ALJ's statement "that Plaintiff did not stop working due to anxiety attacks, but rather, to take care of an ailing grandmother[,]" an activity "inherently inconsistent with Plaintiff's allegations of disabling anxiety." *Id.*

The Court finds that the ALJ made a proper credibility determination regarding Plaintiff's testimony based on the required factors in 20 C.F.R. § 404.1529(c). First, the ALJ discussed Plaintiff's daily activities, which include "cooking and cleaning, because she remains in her home." *Id.* at 19. Second, she discussed Plaintiff's symptoms, including "that she experiences significant anxiety and depression," and that she "experiences anxiety attacks and is unable to go into stores with crowds." *Id.* at 18. Third, the ALJ noted factors that precipitate and aggravate the symptoms, including "being amid crowds" and "go[ing] into stores with crowds." *Id.* Fourth,

12

the ALJ discussed the medication claimant has taken, including "Lexapro, Celexa, and Pristique." *Id.* at 19. Fifth, the ALJ discussed measures other than treatment Plaintiff uses, including that Plaintiff goes to the store late at night to avoid crowds, and that she does not attend large family gatherings. *Id.* at 18. Sixth, the ALJ discussed other factors related to Plaintiff's functional limitations, including "that her sleep is poor and she is often fatigued. [Further, s]he is sometimes sad and tearful. [Finally, w]hen her children and husband are away, she worries." *Id.* at 19.

After considering the additional factors according to 20 C.F.R. § 416.929(c)(3)(i)-(vi), the ALJ properly discounted Plaintiff's testimony to the extent that it was inconsistent with the medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews*, 2007 WL 1839891 at *10. Specifically, the ALJ found that: (1) Plaintiff only sought counseling in March 2010, and then ceased treatment in April 2011, (2) Dr. King's examinations found that Plaintiff only "suffered from moderate symptoms[,]" (3) Plaintiff "was able to attend college and obtain a degree[,]" and (4) Plaintiff "did not stop work as a result of anxiety. Rather she stopped work to assume responsibilities for her grandmother, whose health was deteriorating." T. at 19. Based on foregoing, the ALJ found "that the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." *Id.*

Accordingly, "[t]he Court finds that the ALJ employed the proper legal standards in assessing the credibility of Plaintiff's complaints and adequately specified the reasons for discrediting Plaintiff's statements. *Morris v. Comm'r of Soc. Sec.*, No. 5:12-cv-1795, 2014 WL 1451996, *8 (N.D.N.Y. Apr. 14, 2014).

Additionally, Plaintiff claims that the ALJ must explain why she "found the plaintiff's denial not to be credible" regarding Plaintiff's testimony that she "never stated . . . [that she] was

13

no longer interested in counseling[,]" which is contrary to Dr. King's treatment notes.  Dkt. No. 19 at 10; T. at 43, 353.  However, the ALJ does state that "if the claimant was suffering from disabling symptomology, she would have sought counseling and medication management."  T. at 19.  Accordingly, the ALJ's decision was based on the fact that Plaintiff initially declined treatment, and later on stopped getting treatment, not on the reasons behind ending the treatment.  As the ALJ properly set out her reasons for discounting Plaintiff's testimony, her determination, "taken as a whole . . . is not patently unreasonable[,]" and therefore must be affirmed.  *Hoffman v. Comm'r of Soc. Sec.*, No. 5:13-cv-846, 2014 WL 6610059, *5 (N.D.N.Y. Nov. 20, 2014) (quotation omitted).

Further, Plaintiff takes issue with a number of statements in the ALJ's decision regarding events Plaintiff can no longer attend, and claims that the ALJ failed to explain why Plaintiff's statements were not credible.  Dkt. No. 19 at 10-13.  Plaintiff claims that the ALJ did not acknowledge that "Plaintiff testified that she cannot even [go] to family holiday meals/functions[,]" and that Plaintiff was not able to remain at bingo and "had to leave after about an hour due to a severe panic attack."  *Id.* at 13.  The only limitation the ALJ could have included based on this testimony would be to limit the number of people Plaintiff is required to interact with during work.  However, as discussed above, the ALJ's RFC determination was supported by substantial evidence, and included the limitation that Plaintiff work only in "occupations requiring no interaction with the public or co-workers."  T. at 17.  This limitation in the RFC determination ensures that any error in the ALJ's credibility determination was harmless.

Further, Plaintiff alleges that the ALJ found Plaintiff's testimony that she "wanted to work" as indicative of an ability "to [actually] work a full-time job."  Dkt. No. 19 at 13.  However, the ALJ's decision does not indicate that she made this mistake.  Instead, the decision

14

notes that the ALJ found "evidence of a moderate degree of limitation with regard to social functioning" based on Plaintiff's testimony that she was "looking for employment[,]" and based on other evidence the ALJ discusses. T. at 16.

Based on the foregoing, the Court holds that the ALJ's credibility determination was supported by substantial evidence.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submission and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: March 31, 2015
       Albany, New York

Mae A. D'Agostino
U.S. District Judge